UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT MONTAGUE<br>C/O MCNEAL LEGAL SERVICES<br>3100 E. 45TH St., Ste. 322<br>Cleveland, OH , 44127 | ) ) ) ) ) | CASE NO.<br><br>JUDGE |
| Plaintiff, | ) ) ) | COMPLAINT |
| -vs- | ) ) | |
| CITY OF CLEVELAND<br>601 Lakeside Ave.<br>Cleveland, Ohio 44114 | ) ) ) ) ) | JURY DEMAND ENDORSED<br>HEREON |
| -and- | ) ) | |
| KARRIE HOWARD<br>Department of Public Safety<br>City of Cleveland<br>601 Lakeside Ave., Room 230<br>Cleveland, OH 44113 | ) ) ) ) ) ) | |
| -and- | ) ) | |
| TIMOTHY C. MAFFO-JUDD<br>Individually and in his Official<br>Capacity as Lieutenant,<br>Cleveland Division of Police<br>5507 St. Stephens Court<br>Cleveland, OH 44102 | ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| Bruce D. Cutlip<br>Individually and in his Official<br>Capacity as Lieutenant,<br>Cleveland Division of Police<br>16817 Elsienna Avenue | ) ) ) ) ) | |

1

| | |
|---|---|
| Cleveland, OH 44135 | ) |
| Defendants. | ) |

## INTRODUCTION

Vincent Montague is an active duty Petty Officer First Class in the United States Navy. He was formerly a sergeant in the Cleveland Division of Police until he was unlawfully terminated while on Active Duty Military Status in violation of his federal rights under the Uniformed Services Employment and Reemployment Act of 1994.[1]

Mr. Montague's firing was not the result of his complicity in any bribery scandal as alleged in the media and also specifically by Defendants Maffo-Judd and Cutlip. Mr. Montague has never been indicted, cited with criminal information, or even charged administratively with a single allegation of bribery or complicity to the same. Mr. Montague's wrongful termination was the result of a disciplinary hearing held in his absence, in violation of his contractual, statutory, and constitutional rights.

Plaintiff Montague was subjected to a biased internal affairs investigation which singled him out for discipline, in an effort to cover up a shoddy and unconscionable sting operation spear-headed by Defendant Maffo-Judd. Plaintiff Montague's status as an African-American, former president of the Black Shield

---

[1] Mr. Montague's wrongful termination under USERRA is currently being investigated by the U.S. Dept. of Labor in Case No. OH-2022-00007-20-D. This complaint will be amended on a latter date upon the close of the investigation and issuance of a Right to Sue letter.

2

Association, and outspoken supporter of police accountability were all motivating factors for his persecution.

It is alleged that Defendant City of Cleveland, which is still subject to a consent agreement based upon a pattern and practice of violating the constitutional rights of African-American citizens; *also* has a culture, policy, pattern and practice of violating the constitutional rights of its African-American police officers. Defendant City engages in arbitrary and capricious disciplinary proceedings with one standard and procedure for white officers, and a separate standard and procedure for black officers. The lynching of Plaintiff Montague's career and reputation is just the latest example of African-American police officers being scapegoated by Defendant City in an effort to obtain phony compliance with the Consent Agreement and hollow police accountability.

**JURISDICTION AND VENUE**

1. This action is brought pursuant to claims arising under the laws of the State of Ohio, and O.R.C. § 4112.02. This action is also brought pursuant to 42 U.S.C. § 2000e-2, 42 U.S.C. §1983 and 42 U.S.C. § 1981, as it is also an action for compensatory damages, punitive damages, and attorney fees.

2. Personal Jurisdiction is appropriate as all named defendants reside in, and have caused tortious injury in this forum.

3. Venue is proper in this as the events giving rise to Plaintiffs' claims also occurred in this judicial district.

**PARTIES**

4. Plaintiff, Vincent Montague ("Montague"), is an Ohio citizen, with permanent residence in the city of Summitt County, Ohio. At all times relevant herein, Montague was an employee of City of Cleveland. Employed as a Sergeant in the Cleveland Division of Police..

5. Defendant City of Cleveland ("City") is a local government organized under the laws of Ohio. It is a person under Ohio law, and all times relevant to this complaint acted under color of law.

6. Defendant Director Howard ("Howard")is the Director of Public Safety for the City of Cleveland. At all times relevant herein, he aced in furtherance of the objectives of the city.

7. Defendants Timothy Maffo-Judd ("Maffo-Judd") and Bruce Cutlip ("Cutlip"), at all times relevant herein were employed by Defendant City as police officers. Any actions taken by them were in furtherance of the objectives of Defendant City.

## THE FACTS

### *The Duck Island Social Club*

8. On or about December 2018, Montague met Andrew Long (Long). Long was hosting a an event at his bar, The Duck Island Social Club (Hereinafter referred to as "Club"). Long told Montague that he wished to make a donation to the Black Shield Association for a toy drive.

9. Montague returned to the Club to pick up the check for the toy drive. Long informed Montague of some problems he was having at the Club, and

his desire to hire a police officer for security. Long expressed an interest in building a relationship with law enforcement for patronage, security and good will. Montague agreed to reach out to a police officer who worked part-time security for bars in the second district. .

10. Montague asked Maffo-Judd if he would meet with Long to discuss part-time security work at the Club. Maffo-Judd was known to Montague as someone who did a lot of part-time security work at bars in the second district. Maffo-Judd was also known as someone who coordinated a lot of part-time security work at bars for other police officers as well. Maffo-Judd's father was a former police officer, and bar operator. Due to Maffo-Judd's familiarity and connections, Montague believed Maffo-Judd was someone who could assist Long..

11. Subsequently, Montague and Maffo-Judd had lunch together. Maffo-Judd informed Montague that he was going to meet with Long later that day, and asked Montague if he would accompany him. Montague agreed. Montague and Maffo-Judd drove to the meeting separately.

### *The Meeting*

12. Maffo-Judd arrived at the club ahead of Montague, and was greeted immediately by Andrew Long. Montague arrived at the club about five minutes after Maffo-Judd. Montague observed Long and Maffo-Judd already in the middle of a discussion regarding security, safety concerns at the Club, and Long's history with law enforcement. Montague was on his cell phone for most of the

meeting with Long and Maffo-Judd, and did not .

13. Long and Maffo-Judd have given two materially different versions of the facts regarding their communication at that meeting. Maffo-Judd indicated to Montague that he was concerned that Long was an undercover FBI agent, and that he believed he was being set up to take a bribe. Long has indicated that he only asked Maffo-Judd how he could go about securing his services as part-time security, and also get Maffo-Judd to invite other police-officers to frequent his establishment.

14. Long has indicated that he was previously entrapped by Cleveland Division of Police Officers back in 2012-2013. In an interview given to internal affairs, Long indicated that the police would come into his bar at the end of the night, kick all of the patrons out of the bar, and directed Long to serve them alcohol after hours.

15. Maffo-Judd contacted Montague shortly after the meeting and told Montaague that he believed Long was an FBI asset and potentially attempting to catch Maffo-Judd in a criminal act. Maffo-Judd asked Montague to complete a Form-1 expressing that he, Maffo-Judd, did not solicit or take a bribe.

16. Maffo-Judd then went on to relay to Montague certain information that Montague himself did not witness in the meeting. Maffo-Judd advised Montague that he would send him a copy of his own Form-1, in an effort that Montague could draft a statement similar to Maffo-Judd's own account of what transpired at the meeting.

17. The Cleveland Division of Police have an unofficial policy and/or custom of police-officers enforcing the Blue Line of Silence. Police officers are expected, encouraged and coerced into blind obedience to their fellow officers. The Blue Line of Silence required Montague to back Maffo-Judd's version of the meeting, even through he did not personally witness much of those facts. Because of this custom, and also that Montague had no direct knowledge to contradict Maffo-Judd at that time as he had arrived late to the meeting and was distracted on his cell phone for most of the conversation between Long and Mafoo-Judd.

18. Subsequent to this meeting, Long advised Montague that he believed his meeting with Maffo-Judd ended poorly. Long also indicated to Montague that Maffo-Judd appeared nervous when Montague arrived in the middle of their conversation; as if Maffo-Judd did not want Montague to hear what the two were discussing. It was later revealed to Montague that Maffo-Judd had actually started to advise Long on how to get around after-hours restrictions.

### *The Trial of Andrew Long*

19. Following the aforementioned meeting, Maffo-Judd decided he wanted to conduct a sting operation on Long at the Duck Island Social Club. Defendant Maffo-Judd, with the approval of his chain of command, solicited Andrew Long for a follow-up meeting to discuss security at the Duck Island Social Club. During this meeting, Defendant Maffo-Judd prompted Long to discuss hiring Maffo-Judd as security in order to facilitate the after-hours furnishment of liquor and to abate criminal investigations into the club. If this meeting was not

7

entrapment, it came dangerously close.

20. On January 19, 2019, Defendant Maffo-Judd participated in a sting operation where he wore a recording device and served as security at the duck island social club, where he witnessed and recorded the after-hours dispensation of alcohol. Based on Defendant Maffo-Judd's investigation, Long was indicted for bribery.

21. Following his indictment, Long informed Plaintiff Montague of his charges, and informed Plaintiff that the Cleveland Division of Police were trying to build a case against Plaintiff. Long informed Montague that the police seemed more interested in getting Long to cooperate and make false allegations against Plaintiff.

22. On February 6, 2019, Plaintiff was read his *Miranda* rights and served with a search warrant for his cell-phone. It is noteworthy that Plaintiff was not afforded *Garrity* protection at this time. Faced with the reality that he was under a criminal investigation, Plaintiff enlisted the assistance of criminal defense counsel and heeded their advice to remain silent.

23. Long continued to face prosecution, and made several overtures to Plaintiff to help him defend himself against the allegation that he bribed Defendant Maffo-Judd. Long continued to express to Plaintiff that law enforcement and prosecutors wanted him to give false and incriminating information about Plaintiff's contrived involvement in this scandal. On January 14, 2021, Long pled guilty to bribery and was sentenced to 12 months in prison.

He was granted shock probation on May 13, 2021.

24. Plaintiff Montague was never charged with any crime indicating he committed or was complicit in bribery or any other crime stemming from his acts as a police officer.

### *The Disciplinary Hearing*

25. On June 30, 2021, Plaintiff Montague was finally afforded *Garrity* protection and gave an interview with internal affairs. During this interview, Mr. Montague was subjected to questions relating to facts from 2018 that he did not remember. Attempts were made by the interviewers to attribute statements to Montague that he did not make.

26. Plaintiff Montague was placed on sick leave on August 20, 2021. Plaintiff was not expected to return from sick leave until October of 2021. Nevertheless, Defendant Director Howard attempted to schedule pre-disciplinary hearings for Plaintiff during his convalescence. His hearing was set for September 15,2021.

27. Despite attempts by multiple parties to continue the proceeding on September 15, 2021, Defendant City and Defendant Director Howard were hell-bent on having a disciplinary hearing on that date, even if Plaintiff Montague was not able to be present.

28. Eventually the pre-disciplinary hearing was rescheduled for October 1. 2021. On September 30,2021 Plaintiff Montague was activated for military deployment by the United States Navy. At that time the pre-disciplinary

hearing was moved to October 5, 2021. Plaintiff Montague was placed on Active Duty status on October 4, 2021 and shipped out to MEPS.

29. Despite being on Active Duty status and unavailable due to his service to the United States Navy, Defendant City and Defendant Director Howard still commenced pre-disciplinary proceedings without Plaintiff in attendance. Plaintiff's counsel did appear and specifically objected to the proceedings based on his absence due to active duty military states, The Uniformed Services Employment and Reemployment Act of 1994, The Collective Bargaining Agreement, and other state and federal law.

30. Despite counsel's objections, the hearing continued in Plaintiff's absence, and he was never given an opportunity to be heard or defend himself.

### *The Aftermath*

31. On 10/29/2021, Defendant Maffo-Judd filed suit against Defendant City, Defendant Director Howard, several members of the Cleveland Division of Police, and Plaintiff Montague.

32. Defendant Maffo-Judd's suit alleges that Plaintiff was guilty of facilitating a bribe or complicit in the same.

33. Defendant Cutlip also filed suit against Plaintiff Montague making similar allegations.

34. These allegations were made with knowledge of their untruthfulness or with extreme recklessness as to the truth of the allegations. These allegations have harmed Plaintiff Montague's reputation, physical,

emotional and psychological well-being.

35. On December 29, 2021, Plaintiff Montage was terminated by the Cleveland Division of Police.

36. Plaintiff Montague remains enlisted in the United States Navy at the rank of E-6, as a non-commissioned officer where he continues to serve this country with honor.

### FIRST CLAIM FOR RELIEF – UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT OF 1994 (USERRA) VIOLATION

37. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

38. 38 U.S.C. § provides that:

> "(a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> (b) An employer may not discriminate in employment against or take any adverse employment action against any

person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.."

39. Plaintiff Montague was on active duty in the United States Navy when he was ordered to appear for a pre-disciplinary hearing.

40. Plaintiff was denied the right to participate in this hearing due to his Active-Duty Military status.

41. Plaintiff was discriminated against and received an adverse employment decision, and was terminated as a result of his military status.

42. As a direct and proximate cause of Defendants' misconduct, Plaintiff has suffered and continues to suffer injury and damages as set forth in this Complaint.

**THIRD CLAIM FOR RELIEF – 42 U.S.C. § 2001 Claim for Retaliation**

43. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

44. Plaintiff Montague was outspoken in battling racism within the ranks of Cleveland Division of Police. As President of the Black Shield Association, Plaintiff Montague's position as a champion for the rights of black police officers caused conflict with Defendant Safety Director Howard.

45. Plaintiff Montague frequently complained to Defendant Howard about discriminatory practices in the discipline process, sexual harassment of woman police officers by high-ranking employees of Defendant City, civilian oversight of police discipline, and other issues.

46. Plaintiff Montague was an outspoken supporter of Issue 24. Defendant Director Howard was a notable opponent of this measure.

47. The relationship between Defendant Director Howard and Plaintiff Montague was further strained when Defendant Howard, while campaigning for public office, failed to secure a political endorsement from another black law enforcement agency due to Plaintiff Montague's revelations about how Defendant Director Howard was treating Black Shield Members.

48. Plaintiff Montague engaged in protected activity in advocating for Black Police Officers, protecting women from sexual harassment, and helping to eradicate the racist police culture festering in Defendant City's police department.

49. For his efforts, Plaintiff Montague suffered an adverse employment action.

50. As a direct and proximate cause of Defendants' misconduct, Plaintiffs' suffered and continued to suffer injury and damages as set forth in this

Complaint.

### FOURTH CLAIM FOR RELIEF- 42 U.S.C. § 1981 Claim For Employment Discrimination Based on Race

51. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

52. Plaintiff Montague is an African American.

53. Defendant City is still currently under a consent decree due to a pattern, practice, custom and/or policy of violating the civil rights of African-American citizens. Moreover, many of Defendant City's acts, errors, and omissions were committed by the City's authorized decision-makers including but not limited to, Defendant Safety Director Howard.

54. Plaintiff Montague is, and was at all times relevant to this complaint qualified for and satisfactorily performing his occupational position.

55. He has suffered an adverse employment action , to wit; wrongful termination, discriminatory discipline action, unfair labor practices, defamation, retaliation, hostile work environments, intentional infliction of emotional distress, and other injustices.

56. These adverse employment actions all occurred under circumstances giving rise to an inference of discrimination.

57. As a direct and proximate cause of Defendants' misconduct, Plaintiff suffered and continues to suffer injury and damages as set forth in this

Complaint.

**FIFTH CLAIM FOR RELIEF- 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection Claim**

58. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

59. Defendant City of Cleveland denied Plaintiff Montague his right to be free from invidious discrimination in statutory and other governmental activity as secured by the Fourteenth Amendment to the United States Constitution.

60. Defendant City has a pattern and practice, culture, and unofficial policy of discriminating against African-American police officers. More specifically, African-American police officers are subjected to disparate and discriminatory treatment in assignments, promotions, working conditions, and as they are often disciplined more severely and frequently than similarly situated white police officers.

61. Plaintiff Montague is an African-American, he was performing his position satisfactorily, he was subjected to an adverse employment action, and this adverse employment action occurred under circumstances giving rise to an inference of discrimination.

62. As a direct and proximate cause of Defendants' misconduct, Plaintiff suffered and continues to suffer injury and damages as set forth in this Complaint.

### FIFTH CLAIM FOR RELIEF- O.R.C. § 4112.02 Claim for Unlawful Discrimination

63. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully rewritten herein.

64. Defendants' subjected Plaintiff Montague to a hostile work environment, disparate treatment, and caused his wrongful termination from employment because of his race.

65. As a direct and proximate cause of Defendants' misconduct, Plaintiff has suffered and continues to suffer injuries and damages as set forth in this Complaint.

### SIXTH CLAIM FOR RELIEF- State Law Claim for Defamation

66. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

67. Defendants Maffo-Judd and Cutlip each have made false statements about Plaintiff Mmontague.

68. These statements have been made negligently and/or recklessly with regard to their truthfulness, and/or are outright lies on behalf of Defendants' Maffo-Judd and Cutlip.

69. These allegations include that Plaintiff Montague took a bribe as a police officer, and or engaged in other acts of police misconduct.

70. These allegations subjected Plaintiff to disciplinary proceedings,

employment termination, and criminal investigation.

71. These allegations are defamatory per se, and these allegations have caused special harm to Plaintiff Montague.

72. As a direct and proximate cause of Defendants' misconduct, Plaintiff has suffered and continues to suffer injuries and damages as set forth in this Complaint.

**SEVENTH CLAIM FOR RELIEF- State Law Claim for Intentional Infliction of Emotional Distress**

73. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

74. Defendants engaged in extreme and outrageous behavior as alleged in this complaint.

75. Defendants intended such conduct to inflict such severe emotional distress upon Plaintiff and knew that their conduct would cause Plaintiff severe and serious emotional distress, which was of a nature that no reasonable person could be expected to endure.

76. Defendants' conduct did, in fact, cause such distress.

77. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff was injured and suffered actual damages.

**EIGHTH CLAIM FOR RELIEF- Breach of Contract**

78. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully rewritten herein.

79. Plaintiff Montague and Defendant City had an enforceable contract by way of the collective bargaining agreement.

80. This contract afford Plaintiff several rights including but not limited to the right to a fair disciplinary proceeding, the right to counsel at disciplinary hearings, the right to sick leave, and the right to military leave

81. Defendants City and Director Howard violated each of these rights in breach of contract.

82. As a direct and proximate result of Defendants' breach, Plaintiff was injured and suffered actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Paula Foster, demand that judgment be entered in their favor on all counts and prays the Court award the following relief:

A. Compensatory damages in excess of jurisdictional amount, to be determined at trial, for the violation of Plaintiffs' rights;

B. Punitive damages in an amount to be determined at trial for the willful, wanton, malicious, and reckless conduct of Defendants;

C. Declaratory and injunctive relief as the Court may deem appropriate;

D. Attorney fees and the costs of this action and other costs that may be associated with this action; and

E. All other relief which this Honorable Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by jury pursuant to Ohio Rule of Civil Procedure 38(b) on all issues so triable.

                         Respectfully submitted,

                         */s/Christopher McNeal, Esq.*
                         CHRISTOPHER MCNEAL, ESQ. (#0096363)
                         MCNEAL LEGAL SERVICES, LLC.
                         3100 E. 45th St., Ste. 322
                         Cleveland, Ohio  44127
                         (440) 703-0257 – Telephone
                         chris@mcneallegalservices.com - Email

                         *Attorney for Plaintiff Vincent Montague*