**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCENT MONTAGUE,** | ) | **CASE NO.1:22CV1878** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CITY OF CLEVELAND, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants City of Cleveland's and Cleveland Public Safety Director Karrie Howard's Motion for Judgment on the Pleadings.  (ECF # 6) For the following reasons, Defendants' Motion is granted in part and denied in part.

**Allegations in the Complaint**

According to his Complaint, Plaintiff Vincent Montague ("Montague") was a former police sergeant with the City of Cleveland's Police Department.  Montague is also an active duty Petty Officer First Class in the United States Navy.  Montague alleges he was unlawfully terminated from his position with the Cleveland Police Department while he was serving on active duty with the United States Navy.

Montague alleges that in December of 2018, while employed as a police officer with the City of Cleveland, he met Andrew Long, owner of a bar called the Duck Island Social Club.

Long expressed his desire to Montague to make a donation to the Black Shield Association, a non-profit organization of black police officers, for a toy drive they were promoting.  Montague returned sometime thereafter to pick up a check from Long for the toy drive.  At that time, Long expressed a desire to hire Cleveland police officers for security at his bar.  In response, Montague reached out to Defendant Timothy Maffo-Judd, a fellow Cleveland police officer who Montague knew did part-time security work for bars in the Second District of Cleveland.  Montague also knew Maffo-Judd arranged for other police officers to perform security at bars.

Montague had lunch with Maffo-Judd to discuss the part-time security at the Duck Island Social Club and then drove separately to meet with Long.  Montague alleges Maffo-Judd arrived ahead of him and when Montague arrived, Long and Maffo-Judd were engaged in discussions about Long's need for security and his relationship with law enforcement.  Montague alleges he was on his cellphone for most of the meeting and it was Maffo-Judd that engaged in the discussions with Long.

After the meeting, Maffo-Judd relayed to Montague that he believed Long was working for the FBI and was attempting to set him up to take a bribe.  Long disputes this and states that he only asked Maffo-Judd how to secure officers for security at his bar.  Long also represented he had issues with CPD officers dating back to 2012-2013 when Cleveland police officers would come into his bar, kick out all the patrons and then compel Long to serve them alcohol after hours.

Maffo-Judd then asked Montague to submit a report describing the incident with Long and detailing that Maffo-Judd did not take a bribe from Long.  According to Montague, he was compelled to back Maffo-Judd's version of the meeting because of the unwritten code amongst

2

police officers to support each other and because Montague did not personally witness anything illegal on the part of Maffo-Judd.

After the meeting, Maffo-Judd sought and obtained permission to conduct a sting operation at Long's bar.  The operation was successful in that Long was charged with bribery. Long subsequently informed Montague that the CPD was attempting to build a case against Montague and attempted to get Long to cooperate by making alleged false statements against Montague.  On February 6, 2019, Montague was read his *Miranda* rights and had his cell phone searched.  Montague obtained a defense lawyer. On January 14, 2021, Long pled guilty to bribery.  Montague was never criminally indicted for anything arising out of the meeting with Long.

On June 30, 2021, Montague was given his *Garrity* protections and interviewed by CPD's Internal Affairs officers.   A pre-disciplinary hearing was set for October 1, 2021, however, on September 30, 2021, Montague was activated for military service.  The hearing was moved to October 5, 2021, but Montague had shipped out to the military entrance processing station on October 4, 2021.  The hearing went ahead on October 5, 2021, in Montague's absence. Montague's attorney attended the hearing and objected to its proceeding in the absence of Montague and in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), the Collective Bargaining Agreement between the City of Cleveland and the CPD and other federal and state laws.   Despite Montague's counsel's objections, the hearing proceeded without Montague having the opportunity to attend or defend himself.

On October 29, 2021, Maffo-Judd filed suit against the City of Cleveland, Howard and Montague and alleged Montague facilitated or was complicit in bribery.  Defendant Cutlipp also

filed suit and also alleged that Montague was complicit in bribery.   On December 29, 2021, Montague's employment was terminated by the City of Cleveland.  Montague continues to serve with the United States Navy.

Montague alleges he had frequent disputes with Defendant Howard over the treatment of black officers in regards to the CPD's disciplinary process, sexual harassment of women in the department and their differing views on Issue 24, a local initiative to create a police review board.  Lastly, he alleges further issues with Howard when Howard failed to obtain the endorsement of another black police officer organization due in part to Montague's representations about Howard's treatment of Black Shield members.  Montague alleges all these issues with Howard resulted in his termination.

Montague alleges a claim for violation of the USERRA, for his termination without the opportunity to be heard as he was on active duty with the United States Navy at the time.  He alleges wrongful Retaliation in violation of Title VII, due to his outspoken views including those in support of black police officers and against sexual harassment of women within the CPD.  He alleges racial discrimination in employment in violation of 42 U.S.C. § 1981, and violation of his Equal Protection rights under the Fourteenth Amendment to the United States Constitution.   He further alleges state law claims for hostile work environment and disparate treatment due to his race in violation of O.R.C. § 4112.02, Intentional Infliction of Emotional Distress, Defamation and Breach of Contract.

He brings these claims against the City of Cleveland, Howard, in his official capacity and against Maffo-Judd and Cutlipp in both their official and individual capacities.

4

**Defendants' Motion for Judgment on the Pleadings**

According to Defendants City of Cleveland and Howard, Montague was terminated for being involved in a bribery scandal and then lying about it.   Moreover, even if the Court accepts the allegations in the Complaint as true, as it must on a motion for judgment on the pleadings, then Montague's USERRA fails because Montague's Complaint expressly alleges his cause of termination was his complaints about discrimination and his disputes with Howard, not because of his military service.

Defendants further contend that Montague's Retaliation claim must be dismissed because he failed to first exhaust his administrative remedies by filing with the EEOC.  Montague's Complaint fails to allege that he filed  his Retaliation claim with EEOC before bringing suit in federal court.  In the absence of such allegations, Montague cannot proceed with his Retaliation claim and it must be dismissed.

Defendants also contend that Montague's 42 U.S.C. § 1981 Employment Discrimination claim must be dismissed because municipalities are exempt from § 1981 liability.

Because Montague's discrimination claim fails to allege a similarly situated non-protected class comparator was treated differently and fails to allege any facts supporting his claim that a custom or policy of Defendants resulted in a violation of his constitutional rights, Montague's Fourteenth Amendment Equal Protection and Ohio employment discrimination claims fail.

In addition, Defendants move for judgment on  Montague's state law clams because they are immune from tort liability under O.R.C. § 2744 and because Montague is not a party to Defendant's contract with the police union.  Montague's Defamation claim is brought solely

against Defendants Maffo-Judd and Cutlip.

Finally, Montague's claims against Howard should be dismissed as they are brought against him solely in his official capacity and such claims are in essence claims against the City of Cleveland.

## LAW AND ANALYSIS

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almendares v. Palmer,* 284 F.Supp.2d 799, 802 (N.D. Ohio 2003).  Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.' "  *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.,* 2007 WL 2446740, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  Claims alleged in the complaint must be "plausible," not merely "conceivable."  *Id.* Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised.  *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added). A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c).  "In addition, when a document is referred to

6

in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

## USERRA

USERRA protects "[a] person who is a member of ... or has an obligation to perform service in a uniformed service" from being "denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership ... or obligation." 38 U.S.C. § 4311(a). "An employer shall be considered to have engaged in actions prohibited [by USERRA] ... if the person's membership ... or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership ... or obligation for service." *Id.* § 4311(c)(1). See also *Hickle v. Am. Multi-Cinema, Inc.,* 927 F.3d 945, 952 (6th Cir. 2019).

Defendants contend Montague's Complaint alleges the cause of his termination was his complaints concerning discriminatory practices of the CPD and his personal disputes with Howard and not due to his military service. However, a plain reading of the Complaint reveals that Montague expressly alleges that Defendants scheduled Montague's pre-disciplinary hearing when he was on active duty. It further alleges that because he was on active duty he could not attend the hearing resulting in the denial of his right to be present at the hearing and defend himself. Montague's Complaint specifically alleges he was subsequently terminated as a result of his military status, resulting in a violation of the USERRA. (Complaint ¶'s 40, 41). Although Montague's Complaint alleges other reasons for his termination, these facts are sufficient at the

7

pleading stage to support his claim as the USERRA only requires military service be a "motivating factor" in the adverse employment action.  Therefore,  the Court denies Defendants' Motion for Judgment on the Pleadings on Montague's USERRA claim.

**Title VII Retaliation**

According to his Complaint, Montague alleges he was retaliated against for advocating for black police officers, complaining about discriminatory disciplinary practices within the CPD, complaining about sexual harassment of women police department employees and for expressing views that opposed those of Howard on issues concerning civilian oversight of the CPD.  (Complaint para 45-48).   Montague alleges he suffered an adverse employment action as a result of these activities.

Defendants argue that Montague fails to allege he first filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  Without such allegation, Defendants contend Montague has failed to exhaust his administrative remedies and consequently his Retaliation claim must be dismissed.

Montague alleges he did file with the EEOC and claims the proof of such claim is attached as Exhibit B to his Opposition Brief.

"In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC.  Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts."  *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359, 361–62 (6th Cir. 2010) citing 42 U.S.C. § 2000e–5(e)(1).  The charge must be "sufficiently precise to identify the parties, and to describe

generally the action or practices complained of." 29 C.F.R. § 1601.12(b).  In *Younis*, the Sixth

Circuit discussed the intent and purpose of filing an EEOC charge prior to filing suit in federal

court.

> "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were
> not included in his EEOC charge.  *Younis*, 610 F.3d 361 citing 42 U.S.C. §
> 2000e–5(f)(1); see also *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94
> S.Ct. 1011, 39 L.Ed.2d 147 (1974).  This rule serves the dual purpose of giving
> the employer information concerning the conduct about which the employee
> complains, as well as affording the EEOC and the employer an opportunity to
> settle the dispute through conference, conciliation, and persuasion.  (Internal
> citation omitted).  Hence, allowing a Title VII action to encompass claims outside
> the reach of the EEOC charges would deprive the charged party of notice and
> would frustrate the EEOC's investigatory and conciliatory role. At the same time,
> because aggrieved employees—and not attorneys—usually file charges with the
> EEOC, their pro se complaints are construed liberally, so that courts may also
> consider claims that are reasonably related to or grow out of the factual
> allegations in the EEOC charge."

*Younis*, 610 F.3d 362.  See also *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th

Cir.2006).  Thus, "whe[n] facts related with respect to the charged claim would prompt the

EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing

suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir.1998).

 "A plaintiff seeking to assert a Title VII retaliation claim 'must perform two

administrative prerequisites: (1) file timely charges of employment discrimination with the

EEOC, and (2) receive and act upon the EEOC's statutory notice of the right to sue.'" *Jones v.

Air Serv./ABM*, No. 19-CV-2861-TLP-TMP, 2020 WL 6440712, at *3 (W.D. Tenn. July 16,

2020), report and recommendation adopted, No. 219CV02861TLPTMP, 2020 WL 4500673

(W.D. Tenn. Aug. 5, 2020) quoting *Brown v. City of Cleveland*, 294 F. App'x 226, 233 (6th Cir.

2008).  As a result, before filing a retaliation claim in federal court a plaintiff must first file a

retaliation charge with the EEOC. *Sullivan v. Coca-Cola Bottling Co. of Ohio/Kentucky, 182* F.
App'x 473, 479 (6th Cir. 2006) see also *Tisdale v. Federal Express Corp.*, 415 F.3d 516, 527 (6th
Cir.2005).

Montague does not allege in his Complaint that he exhausted his administrative remedies
prior to filing suit. Nowhere in the Complaint does he allege that he filed an action with the
EEOC or corresponding Ohio Civil Rights Commission ("OCRC") nor does he allege that he
received a Right to Sue letter from the same. When Defendants note this in their Motion for
Judgment on the Pleadings, Montague responds that he did file and did receive a Right to Sue
letter which he claims he attached to his Opposition Brief as Exhibit B. However, there is no
attachment to his Opposition Brief. Defendants point this out in their Reply brief and, as of the
date of this Opinion, Montague has failed to produce the EEOC/OCRC Complaint and Right to
Sue letter. Therefore, the Court finds Montague has failed to allege and failed to produce any
evidence that he filed an EEOC charge and obtained a Right to Sue letter as required before he
can bring a Title VII Retaliation claim.

Defendants attached to their Reply brief a 2021 filing by Montague with the OCRC,
alleging race and disability discrimination along with a retaliation claim against Defendants.
However, the factual allegations forming the basis of these claims are entirely unrelated to those
alleged in Montague's Complaint. Instead, Montague's 2021 OCRC Complaint alleges
discrimination by CPD officers in attempting to serve papers on Montague by unlawfully putting
them in his U.S. mailbox without paid postage. He further alleges Howard attempted to schedule
administrative hearings against Montague while Montague was on sick leave. Lastly, Montague
alleges Defendants scheduled his administrative hearing after he enlisted in the US Navy and

then attempted to convince the Navy to postpone his enlistment until after the administrative

hearing.  Entirely absent from these allegations are any concerning complaints he made to

Howard about discriminatory treatment of officers, or opposition to political positions taken by

Howard.  This further militates in favor of judgment for Defendants as Montague's Retaliation

claim is based on factual allegations that were not part of his OCRC Complaint and are not

reasonably related to nor grow out of his OCRC Complaint.  Moreover, he has not produced a

Right to Sue letter on his allegations of Retaliation.  Therefore, the Court grants Defendants'

Motion on Montague's Retaliation claim.

## Discrimination and 42 U.S.C. § 1981

According to Defendants, Montague cannot assert a claim for discrimination against

them under 42 U.S.C. § 1981 as municipalities are immune from such claims.  "The Sixth Circuit

has held that § 1981 does not provide a private cause of action against governmental entities or

state actors in their official or individual capacities."  *Shoemake v. Mansfield City Sch. Dist. Bd.

of Educ.,* 61 F. Supp. 3d 704, 721 (N.D. Ohio 2014), citing *Arendale v. City of Memphis,* 519

F.3d 587, 598–99 (6th Cir.2008).   Rather, "'the express cause of action for damages created by

§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981

by state governmental units.'"  *Arendale,* 519 F.3d at 599 (quoting *Jett v. Dallas Indep. Sch.

Dist.,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).  "Relying on this authority,

district courts within this Circuit have consistently dismissed § 1981 claims brought against state

and local governmental entities."  *Shoemake*, 61 F. Supp. 3d at 721 citing e.g. *Wallace v. The

MetroHealth System*, 2013 WL 5739705 at *9–10 (N.D.Ohio Oct. 22, 2013); *Chung v. Berkman,*

2013 WL 4523513 at *5 (N.D. Ohio Aug. 26, 2013); *Garceau v. City of Flint*, 2013 WL

5954493 at *4–5 (E.D.Mich. Nov. 7, 2013); *Jones v. City of Franklin,* 2010 WL 2507771 at *12 (M.D.Tenn. June 18, 2010).

Montague has sued Howard in his official capacity only, but the Sixth Circuit has expressly held that "a plaintiff cannot use § 1981 to sue a state actor in his or her official capacity."*McCormick v. Miami Univ.,* 693 F.3d 654, 660 (6th Cir. 2012) see also *Grinter v. Knight,* 532 F.3d 567, 577 (6th Cir.2008) ("§ 1983 provides an exclusive remedy for violations against state actors sued in their official capacities.")

Montague failed to oppose Defendants' Motion for Judgment on the Pleadings on his § 1981 claim.  Therefore, because §1981 does not provide a cause of action for Montague against these Defendants and because Montague does not oppose Defendants' Motion, the Court grants Defendants' Motion and dismisses Montague's § 1981 discrimination claim.

### 42 U.S.C. § 1983 Fourteenth Amendment Equal Protection Claim

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o state shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Carpenter v. City of Flint,* No. 11-CV-10304, 2014 WL 632359, at *4 (E.D. Mich. Feb. 18, 2014 quoting  U.S. Const. amend. XIV, § 1.  "In order to prove an equal protection violation, plaintiff must show 'discrimination by the government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'"   *Carpenter* at *4 quoting *TriHealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783 (6th Cir.2005).

According to his Complaint, Montague alleges the following in support of his Equal Protection claim under § 1983:

Defendant City of Cleveland denied Plaintiff Montague his right to be free
from invidious discrimination in statutory and other governmental activity as
secured by the Fourteenth Amendment to the United States Constitution.

Defendant City has a pattern and practice, culture, and unofficial policy of
discriminating against African-American police officers. More specifically,
African-American police officers are subjected to disparate and discriminatory
treatment in assignments, promotions, working conditions, and as they are often
disciplined more severely and frequently than similarly situated
white police officers.

Plaintiff Montague is an African-American, he was performing his
position satisfactorily, he was subjected to an adverse employment action, and
this adverse employment action occurred under circumstances giving rise to an
inference of discrimination.  (Complaint ¶s. 59-61).

Defendants move for judgment on this claim contending Montague has failed to plausibly

allege that any similarly situated non-protected class comparator was treated more favorably than

himself.  Without such allegation Montague cannot show an underlying constitutional violation

and his Equal Protection claim fails as a matter of law.  Nor does Montague allege that his

termination was due to his race.  Instead, he alleges it was due to his complaints and his military

service.  As a result, Defendants argue his Equal Protection claim fails.

In the absence of an underlying constitutional violation Montague cannot prevail on his

Equal Protection claim asserted against a municipality.  Moreover, Montague's Complaint only

provides  a conclusory allegation that his wrongful termination was the result of a pattern and

practice, culture, and policy of the City of Cleveland in discriminating against African-American

police officers.  But this allegation is devoid of any facts supporting the same.  As a result,

Defendants argue this claim fails in the absence of any plausible factual basis.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged

federal right violation occurred because of a municipal policy or custom." *Thomas v. City of*

*Chattanooga,* 398 F.3d 426, 429 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). In other words, "[a] municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' " *Id.* (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018).  Under *Monell,* a plaintiff may demonstrate a claim against a municipality if the underlying constitutional violation occurred as a result of: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.*   However, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 731 (E.D. Mich. 2021) *quoting Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Defendants contend that Montague's vague reference to the Consent Decree the City of Cleveland entered into to correct discriminatory practices within the department is insufficient to support a *Monell* claim of discriminatory policies and practices.  Instead, they argue that Montague has to allege a specific constitutional violation by an employee of City of Cleveland or identify a specific policy or custom of the City of Cleveland in order to survive a motion to dismiss.

"It is well established that an institution may not be sued for injuries inflicted solely by its employees or agents under § 1983."  *Kuhlman v. City of Cleveland,* No. 1:22-CV-00536, 2023 WL 2652585, at *9 (N.D. Ohio Mar. 23, 2023) *citing Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); see also *Baynes v. Cleland,* 799 F.3d 600, 622 (6th Cir. 2015); *D'Ambrosio v. Marino,* 747 F.3d 378, 386 (6th Cir. 2014).  In *Gregory v. City of Louisville*, 444

14

F.3d 725, 752 (6th Cir. 2006), the Sixth Circuit held, "Section 1983 does not permit a plaintiff to sue a local government entity on the theory of respondeat superior."). Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the "moving force" behind the injury alleged.' " *D'Ambrosio,* 747 F.3d at 388-89 (quoting *Alman v. Reed,* 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted)).

Here, Montague has alleged, albeit opaquely, that he was racially discriminated against when he was wrongfully terminated and subject to harsher discipline than white officers and that the driving force behind such unlawful acts was the City of Cleveland's customs and practices. (See Complaint ¶ 55, 56, 59-61, and 64.)   He asserts that the City of Cleveland has a "pattern and practice, culture and unofficial policy of discriminating against African-American police officers.  More specifically, African-American police officers are subjected to disparate and discriminatory treatment in assignments, promotions, working conditions, and as they are often disciplined more severely and frequently than similarly situated white police officers." (Complaint ¶ 60).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

Montague alleges the City of Cleveland has a pattern and practice, culture and unofficial policy of discriminating against African-American police officers, including subjecting them to disparate treatment in their assignments, promotions, working conditions and are disciplined more severely and frequently.  However, only the disparate discipline allegation applies as Montague fails to allege any facts that support his claims that he was denied a promotion, was

15

given a less desirable work assignment or had any issues with his working conditions.  Instead, the only viable M*onell* claim he alleges is he was disciplined more severely than similarly situated white officers due to his race when he was terminated.

The Court notes that a municipality cannot be liable for an "unofficial policy" but instead the complained of violation must be due to an "official" policy.  See  *Delozier v. Bradley Cnty. Bd. of Educ.,* 44 F. Supp. 3d 748, 768 (E.D. Tenn. 2014) ("a § 1983 plaintiff can draw from one of four sources to establish a municipality's liability for an illegal custom or policy: "(1) the municipality's legislative enactments or ***official agency policies***..."" quoting *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir.2005)). (Emphasis added).

While arguably a close call, Montague has alleged sufficient facts that the City of Cleveland violated his constitutional right due to its pattern and practice of treating African-American police officers differently than white officers when it terminated his employment due to his race.   Therefore, the Court denies Defendants' Motion for Judgment on the Pleadings on Montague's Fourteenth Amendment Equal Protection Claim.

## State Law Claims

## Race Discrimination

Montague alleges claims for hostile work environment and disparate treatment in violation of Ohio O.R.C. § 4112.02 against all Defendants.  Defendants move for judgment on Montague's state law discrimination claim as Montague has not identified a similarly situated comparator on his discrimination claim.

## Defamation

Montague alleges Defendants Maffo-Judd and Cutlip made false statements about

16

Montague taking a bribe as well as other undefined "acts" that resulted in his ultimate termination and criminal investigation.  He then concludes he suffered injuries due to Defendants' misconduct.

**Intentional Infliction of Emotional Distress**

Montague alleges that all the acts alleged in his Complaint resulted in his suffering severe and serious emotional distress.  Defendants contend they are immune from liability on his Intentional Infliction of Emotional Distress under O.R.C. § 2744.02 which grants immunity to political subdivisions for intentional torts.

**Breach of Contract**

Montague alleges he and the City of Cleveland are parties to the Collective Bargaining Agreement which requires police officers be given a fair disciplinary proceeding, the right to counsel at disciplinary hearings the right to sick leave and military leave.  Each of these rights were violated by Defendants City of Cleveland and Howard.

Defendants assert they are entitled to judgment on Montague's Breach of Contract claim as there is no contract between Montague and the City of Cleveland.

In his Opposition Brief, Montague fails to oppose or even offer any arguments in defense of his state law claims. It is well established that, if a plaintiff fails to respond or to otherwise oppose a defendant's motion to dismiss, a district court may deem the plaintiff to have waived opposition.  See, e.g., *Humphrey v. U.S. Attorney Gen.'s Office,* 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived.).

17

Therefore, the Court grants Defendants' Motion on Montague's state law claims as Montague has not opposed Defendants' Motion on these claims.

Finally, the Court agrees that claims against Defendant Howard in his official capacity only are in effect claims against the City of Cleveland.  An official-capacity claim against a person is essentially a claim against the municipality.  See *Essex v. Cnty. of Livingston,* 518 F. App'x. 351, 354 (6th Cir. 2013)).  Therefore, the Court grants judgment for Howard on Montage's claims against him in his official capacity as they are appropriately before the Court against the City of Cleveland itself.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion for Judgment on the Pleadings on Montague's claims against Howard, Montague's Retaliation claim, Montague's 1981 claim for Employment Discrimination based on Race and Montague's state law claims.  The Court denies Defendant City of Cleveland's Motion on Montague's USERRA and *Monell* claims.

IT IS SO ORDERED.


 /s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

18

19