## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **VINCENT MONTAGUE,** | ) | **CASE NO.1:22CV1878** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CITY OF CLEVELAND, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant City of Cleveland's unopposed Motion for

Summary Judgment.  (ECF # 31). For the following reasons, Defendant's unopposed Motion is

granted.

### Allegations in the Complaint

As discussed previously, according to his Complaint, Plaintiff Vincent Montague

("Montague") was a former police sergeant with the City of Cleveland's Police Department.

Montague is also an active duty Petty Officer First Class in the United States Navy.  Montague

alleges he was unlawfully terminated from his position with the Cleveland Police Department

while he was serving on active duty with the United States Navy.

Montague alleges that in December of 2018, while employed as a police officer with the

City of Cleveland, he met Andrew Long, owner of a bar called the Duck Island Social Club.

Long expressed his desire to Montague to make a donation to the Black Shield Association, a

non-profit organization of black police officers, for a toy drive they were promoting.  Montague returned sometime thereafter to pick up a check from Long for the toy drive.  At that time, Long expressed a desire to hire Cleveland police officers for security at his bar.  In response, Montague reached out to Defendant Timothy Maffo-Judd, a fellow Cleveland police officer who Montague knew did part-time security work for bars in the Second District of Cleveland.  Montague also knew Maffo-Judd arranged for other police officers to perform security at bars.

Montague had lunch with Maffo-Judd to discuss the part-time security at the Duck Island Social Club and then drove separately to meet with Long.  Montague alleges Maffo-Judd arrived ahead of him and when Montague arrived, Long and Maffo-Judd were engaged in discussions about Long's need for security and his relationship with law enforcement.  Montague alleges he was on his cellphone for most of the meeting and it was Maffo-Judd that engaged in the discussions with Long.

After the meeting, Maffo-Judd relayed to Montague that he believed Long was working for the FBI and was attempting to set him up to take a bribe.  Long disputes this and states that he only asked Maffo-Judd how to secure officers for security at his bar.  Long also represented he had issues with CPD officers dating back to 2012-2013 when Cleveland police officers would come into his bar, kick out all the patrons and then compel Long to serve them alcohol after hours.

Maffo-Judd then asked Montague to submit a report describing the incident with Long and detailing that Maffo-Judd did not take a bribe from Long.  According to Montague, he was compelled to back Maffo-Judd's version of the meeting because of the unwritten code amongst police officers to support each other and because Montague did not personally witness anything

2

illegal on the part of Maffo-Judd.

After the meeting, Maffo-Judd sought and obtained permission to conduct a sting operation at Long's bar.  The operation was successful in that Long was charged with bribery. Long subsequently informed Montague that the CPD was attempting to build a case against Montague and the CPD attempted to get Long to cooperate by making alleged false statements against Montague.  On February 6, 2019, Montague was read his *Miranda* rights and had his cell phone searched.  Montague obtained a defense lawyer.  On January 14, 2021, Long pled guilty to bribery.  Montague was never criminally indicted for anything arising out of the meeting with Long.

On June 30, 2021, Montague was given his *Garrity* protections and interviewed by CPD's Internal Affairs officers.[1]   A pre-disciplinary hearing was set for October 1, 2021, however, on September 30, 2021, Montague was activated for military service.  The hearing was moved to October 5, 2021, but Montague had shipped out to the military entrance processing station on October 4, 2021.  The hearing went ahead on October 5, 2021, in Montague's absence. Montague's attorney attended the hearing and objected to its proceeding in the absence of Montague and in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), the Collective Bargaining Agreement between the City of Cleveland and the CPD and other federal and state laws.   Despite Montague's counsel's objections, the hearing proceeded without Montague having the opportunity to attend or defend himself.

---

[1]     "As a matter of Fifth Amendment right, *Garrity* precludes use of public employees' compelled incriminating statements in a later prosecution for the conduct under investigation."  *McKinley v. City of Mansfield*, 404 F.3d 418, 427 (6th Cir. 2005).  See also  *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

On October 29, 2021, Maffo-Judd filed suit against the City of Cleveland, Howard and Montague and alleged Montague facilitated or was complicit in bribery. Defendant Cutlipp also filed suit and also alleged that Montague was complicit in bribery. On December 29, 2021, Montague's employment was terminated by the City of Cleveland. Montague continues to serve with the United States Navy.

Montague alleges he had frequent disputes with Defendant Howard over the treatment of black officers regarding the CPD's disciplinary process, sexual harassment of women in the department and their differing views on Issue 24, a local initiative to create a police review board. Lastly, he alleges further issues with Howard when Howard failed to obtain the endorsement of another black police officer organization due in part to Montague's representations about Howard's treatment of Black Shield members. Montague alleges all these issues with Howard resulted in his termination.

Montague alleged a claim for violation of the USERRA for his termination without the opportunity to be heard as he was on active duty with the United States Navy at the time. He alleged wrongful Retaliation in violation of Title VII, for his outspoken views including those in support of black police officers and against sexual harassment of women within the CPD. He alleged racial discrimination in employment in violation of 42 U.S.C. § 1981, and violation of his Equal Protection rights under the Fourteenth Amendment to the United States Constitution. He further alleged state law claims for hostile work environment and disparate treatment due to his race in violation of O.R.C. § 4112.02, Intentional Infliction of Emotional Distress, Defamation and Breach of Contract.

He brought these claims against the City of Cleveland, Howard, in his official capacity

4

and against Maffo-Judd and Cutlipp in both their official and individual capacities.

On December 11, 2023, the Court issued an Opinion and Order granting Defendants' Motion for Judgment on the Pleadings on Montague's claims against Howard, Montague's Retaliation claim, Montague's § 1981 claim for Employment Discrimination based on Race and Montague's state law claims.  The Court denied Defendant City of Cleveland's Motion on Montague's USERRA and *Monell* claims.  It is these two remaining claims upon which Defendant seeks summary judgment.

**Defendant's Motion**

According to Defendant, Plaintiff's claims fail because the unrebutted evidence demonstrates Plaintiff was dismissed for violations of the City of Cleveland's Manual of Rules and General Police Orders and not as the result of any discriminatory nor anti-military motive. General Police Order 1.07.06 sets out the disciplinary consequences for a Group III violation. Group III violations include dishonesty, concealing information related to misconduct and gross neglect of duty.  Once a disciplinary investigation reveals a potential violation a charge letter is issued outlining the alleged misconduct and that it constituted a Group III violation.  Group III violations carry a presumption of termination.  Safety Director Karrie Howard enforced the rules and used the discipline matrix found in the General Police Orders, resulting in Plaintiff's termination.

The only evidence produced in this case demonstrates that Plaintiff was terminated for his role in a bribery scandal and then lying to investigators about the matter.  Howard provides a declaration wherein he attests he was Cleveland's Safety Director with full authority to discipline officers up to and including termination.  Cleveland conducted an investigation of Plaintiff for

5

his alleged communications with a suspect indicted for attempting to bribe an officer.  Plaintiff

then allegedly lied to Cleveland Internal Affairs investigators about the underlying incident.  A

charge letter was issued outlining seventeen Group III specifications, each one carrying the

potential for dismissal.  (ECF # 31-3 pg 3).  Howard declares that he reviewed the evidence from

the  investigation and made the decision to terminate Plaintiff.  At the time the charge letter was

issued and a hearing was set, Howard was unaware that Plaintiff had joined the military.  Howard

states that it is patently untrue that he terminated Plaintiff due to Plaintiff's race and military

service as Howard is a black male and military reservist himself.  (*Id.*).  Instead, Howard testifies

that he terminated Plaintiff because the evidence showed Plaintiff communicated with an

individual indicted for attempting to bribe an officer.  More troubling to Howard was Plaintiff's

deceptive responses to investigators.  While under oath, Plaintiff was unable to provide sufficient

responses to investigators about his misconduct.  It was for his misconduct that Howard

terminated Plaintiff and not due to his race or military service.  (*Id*. at 4).

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if  "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See*

Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of

material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v.

Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other

materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

This is a one-sided evidentiary story.  Defendant filed its Motion for Summary Judgment on April 4, 2025.  Plaintiff failed to oppose the Motion for Summary Judgment for three months. In an abundance of caution and given this Court's strong preference to determine matters based

on the merits of the claims, the Court issued Plaintiff a show cause order on July 15, 2025.  The Court gave Plaintiff an opportunity to explain why he failed to oppose the Motion for Summary Judgment.  However, Plaintiff failed to respond to the show cause order as well as the summary judgment motion.  As of the writing of this Opinion, Plaintiff has offered no defense to the Motion, thus leaving Defendant's evidence unrebutted.

Because Defendant has produced the declaration of its decision maker attesting that Plaintiff's termination was due to his dishonesty and not for any discriminatory motive, the Court finds Defendant is entitled to summary judgment on Plaintiff's remaining claims.  Because the Sixth Circuit has held that a party, in opposing a properly supported motion for summary judgment, may not rest on the pleadings but must provide sufficient evidence in support of his claims, the lack thereof militates in favor of judgment for Defendant.

Plaintiff's USERRA claim states  he was "denied the right to participate in this hearing due to his Active-Duty Military status.  Plaintiff was discriminated against and received an adverse employment decision, and was terminated as a result of his military status."  (Complaint at ¶ 41-42).  However, Howard's declaration attests that Plaintiff was terminated for numerous violations of Cleveland's General Police Orders and Manual of Rules.  These carry disciplinary penalties up to and including dismissal.  Howard says he made the decision to terminate Plaintiff not due to his military status or race (both qualities Howard himself has in common with Plaintiff), but rather his dishonesty and communications with a person indicted for attempted bribery.  Plaintiff was notified of these infractions prior to his departure for military service.  Thus, Defendant can show Plaintiff was facing termination for his misconduct prior to his military obligation.  Therefore, the Court finds the unrebutted evidence demonstrates Plaintiff's

termination was unrelated to his military service.

Likewise, Plaintiff's Equal Rights claim fails because the unrebutted evidence demonstrates Plaintiff's termination was unrelated to his race but was instead for his multiple violations of the General Police Orders and Manual of Rules.  In addition, according to the Sixth Circuit, "[a] valid equal-protection claim requires showing that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform Am. v. City of Detroit, Michigan,* 37 F.4th 1138, 1152 (6th Cir. 2022)  see also *Ryan v. City of Detroit*, 698 F. App'x 272, 281 (6th Cir. 2017) (referring to the showing of disparate treatment of similarly situated persons as "a threshold requirement for an Equal Protection claim").  Here, with no responsive brief or evidence, Plaintiff fails to meet his threshold requirement of producing a similarly-situated comparator who was treated differently.  Consequently, his Equal Protection claim fails and Defendant is entitled to summary judgment.

Finally, because Plaintiff has failed to demonstrate an underlying constitutional violation his *Monell* claim fails as well.  "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas,* 753 F.3d 606, 622 (6th Cir. 2014).

Therefore, for the foregoing reasons, the Court grants Defendant's unopposed Motion for Summary Judgment on all Plaintiff's claims.

IT IS SO ORDERED.

Date: August 19, 2025                    /s/Christopher A.Boyko_____
                                          CHRISTOPHER A. BOYKO
                                          United States District Judge